Reynaldo TONGOL and Hosea Perkins L., on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

Raymond DONOVAN, in his capacity as Secretary of the U.S. Dept. of Labor; Kay Rex Kiddoo in her capacity as Director, California Employment Development Department; California Unemployment Insurance Appeals Board; California Employment Development Department, Defendants-Appellants.

No. 83–2432.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1984.

Decided April 1, 1985.

Richard M. Pearl, Pearl, McNeill, Gillespie & Standish, Oakland, Cal., for plaintiffs-appellees.

Wendy M. Keats, Dept. of Justice, Washington, D.C., for defendants-appellants.

Before WALLACE, KENNEDY, and FLETCHER, Circuit Judges.

WALLACE, Circuit Judge:

The Secretary of Labor (the Secretary) appeals an award of attorneys' fees against him pursuant to the Equal Access to Justice Act (the Act), 28 U.S.C. § 2412, on the grounds that the case was not pending as to him when the Act took effect, that he is immune from 42 U.S.C. § 1983 when functioning in his official capacity and thus from any liability under the Act in this case dependent on section 1983, that his legal position was substantially justified, and that the award was excessive. Tongol argues that he is entitled to an award under the Act for reasons opposite to those stated by the Secretary and also on the basis of a "common fund" theory incorporated into the Act. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Because we agree with the Secretary that this case was no longer pending against him when the Act took effect, we reverse the district court's decision and do not reach the other issues.

I

In 1976, Tongol brought the underlying class action against the Secretary and certain California state agencies to enjoin enforcement of a labor regulation governing the distribution of federal unemployment benefits by state agencies. Although the district court struck down the regulation as lacking statutory authority, it denied Tongol's request for attorneys' fees pursuant to 42 U.S.C. § 1988 on the ground that the action failed to meet that section's requirements. The district judge also stated at the hearing of the motion for fees that the

barrier of federal sovereign immunity was "just flat out against attorney's fees" against the federal government.

The Secretary appealed the invalidation of the regulation, and Tongol cross-appealed the denial of fees. We affirmed the district court's invalidation of the regulation, *Tongol v. Usery*, 601 F.2d 1091, 1095–96 (9th Cir.1979), but reversed the district court on the issue of attorneys' fees, holding that Tongol's suit made out a section 1983 claim against the California state officials, thus making Tongol eligible for a fee award against the state under section 1988. *Id.* at 1096–1100. Although we implicitly affirmed the district court's denial of fees against the United States by discussing the elements of the section 1983 claim with respect to only the state defendants, *see id.* at 1097, 1099–1100, we did not otherwise mention the issue of federal liability. In any case, the United States was absolutely immune at that time against any liability for attorneys' fees under any applicable theory.

In a hearing on remand, Tongol stated that he intended to continue his attorneys' fees litigation solely for the amount of California's liability, which we had found, and nothing else. The Secretary, therefore, ceased to participate in the litigation, except to file required compliance reports.

The district court ultimately assessed the full amount of Tongol's fees against the state. The state appealed, contending it should be responsible only for the amount of Tongol's fees attributable to its part in the litigation. The Secretary did not participate in this second appeal, and he was not included in Tongol's list of interested parties.

While the second appeal was pending, the Secretary filed a status report with the district court objecting to any further compliance reports and requesting that the case be "closed as to the federal defendant." The district court did not formally dismiss the Secretary in response to this request, but it also did not demand any more compliance reports after October 15, 1980.

During this same period, Congress passed the Act, which permits fee awards against the United States under certain circumstances in cases pending against the United States on or after October 1, 1981. *See* 5 U.S.C. § 504 note. Because the second appeal was still pending on October 1, 1981, when the Act took effect, the state suggested that the Act allowed Tongol to obtain fees against the United States.

In an unpublished disposition, we agreed that the state's liability under section 1988 extended only to the amount of Tongol's fees attributable to it, and we remanded the case for a proper determination of that amount. *Tongol v. Usery*, 671 F.2d 504 (9th Cir. 1981) (mem.) (reporting decision without published opinion). Although we expressed doubt concerning the availability of a fee award against the United States because of the law-of-the-case doctrine, we nevertheless directed the district court to examine whether the Act allowed awards against the United States retroactively. *Id.* at 2 & n. 3.

After the second remand, Tongol and the state settled the amount of the state's liability for fees at just under $12,000. *Tongol v. Usery*, 575 F.Supp. 409, 412 (N.D.Cal. 1983). The district court then determined that the Act permitted an award of attorneys' fees against the United States, *id.* at 414–15, and awarded approximately $24,-000. The district court first reasoned that the law-of-the-case doctrine did not bar the award because we had not explicitly affirmed the district court's denial of fees against the United States in the first appeal. *Id.* at 412. The court then decided that the case was pending on October 1, 1981, when the Act went into effect, because the attorneys' fee issue was still unresolved on that date. *Id.* at 412–13. The court next concluded that the Secretary violated section 1983 by depriving the plaintiff class of a federal right in concert with state authorities, thus making the Secretary liable for fees under section 1988 as incorporated into the Act, 28 U.S.C. § 2412(b). 575 F.Supp. at 414–15. The court also found the United States liable for fees under a separate provision of the

Act, 28 U.S.C. § 2412(d)(1)(A), on the ground that the Secretary was not "substantially justified" in the legal position he took regarding the regulation. 575 F.Supp. at 415. This third appeal followed.

## II

■ We agree with the district court's conclusion that the law-of-the-case doctrine does not bar an award of attorneys' fees in this case, but for a different reason. The district court held that the doctrine does not apply because we did not expressly affirm its denial of fees against the United States in our August 9, 1979 disposition. 575 F.Supp. at 412. We need not decide whether an express ruling is required or whether an implicit affirmance is sufficient to trigger the law-of-the-case doctrine. The doctrine clearly does not apply here where Tongol seeks a ruling under a statute that did not exist when our earlier determination was made because the doctrine does not apply where "controlling authority has ... made a contrary decision of the law applicable" since the original decision was issued. *Planned Parenthood v. Arizona,* 718 F.2d 938, 949 (9th Cir.1983), *quoting White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967) (quoted in *Bloom v. International Brotherhood of Teamsters Local 468,* 752 F.2d 1312, 1317 (9th Cir.1984)).

## III

The Act applies only to civil actions by or against the United States or its officers that are "pending on, or commenced on or after" October 1, 1981. 5 U.S.C. § 504 note. The critical issue that we must decide, therefore, is whether this case was still pending against the Secretary on the effective date of the Act. Because of our disposition of that issue, we do not reach the question whether Tongol meets the Act's requirements.

The precise issue before us has not been squarely addressed by our court. In *Rawlings v. Heckler,* 725 F.2d 1192 (9th Cir. 1984), we discussed only whether fees incurred prior to the effective date of the Act may be assessed against the government.

The action itself was pending on the critical date. A closer case is *United States v. Ford,* 737 F.2d 1506 (9th Cir.1984). There, the district court had entered its judgment which dismissed the action with prejudice and awarded fees and costs because the government had acted vexatiously. *Id.* at 1508. The amount of the award had not yet been determined by the district court on the effective date of the Act. *Id.* There is no indication that a notice of appeal had been filed. Thus, the matter was still before the district court. We did not provide extensive analysis of the question —indeed, the question was not put to us because both sides agreed that the "proceedings" were still pending on the effective date of the Act. *Id.* We discussed only the applicability of new law to a pending case and, as a part of that discussion and consistent with the issue as framed by the parties, pointed out that the Act was intended to apply to cases pending on the effective date. *Id.* Thus, we address the precise issue before us for the first time. Its applicability is obviously limited to those few cases in which the only proceeding alive on October 1, 1981 involves solely the matter of attorneys' fees. The issue is one of law and is, therefore, reviewable de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Waivers of sovereign immunity must be strictly and narrowly construed. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983) (*Ruckelshaus* ); *see also Lauritzen v. Lehman,* 736 F.2d 550, 555–56 (9th Cir. 1984). That principle, which applies in this case because the Act waives federal sovereign immunity with respect to attorneys' fees, *see Ruckelshaus,* 463 U.S. at 685, 103 S.Ct. at 3277, reflects the concern that "the United States Treasury [be protected] from potentially excessive liabilities which Congress did not anticipate." *Nichols v. Pierce,* 740 F.2d 1249, 1255 (D.C.Cir.1984) (*Nichols* ). It prevents us from expanding the United States' liability "beyond what

the language *requires." Ruckelshaus*, 463 U.S. at 685, 103 S.Ct. at 3277 (emphasis added), *quoting Eastern Transportation Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927).

Tongol argues that this case was still pending when the Act took effect even though the merits had already been resolved, because (1) the federal government had not been formally dismissed as a party and (2) the amount of the state's liability for attorneys' fees remained at issue. This case is somewhat unusual in that the only issue remaining on the Act's effective date was "collateral to the main action," *International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local Union 75 v. Madison Industries*, 733 F.2d 656, 659 (9th Cir.1984). Moreover, this issue related solely to the federal government's co-party. We are unaware of any case concerning the Act's applicability when the only issue pending on the Act's effective date was a collateral issue relating solely to a nonfederal co-party. We find helpful, however, decisions from other circuits that address the Act's applicability when the only issue pending is the federal government's own liability for attorneys' fees.

In *Nichols*, for example, the District of Columbia Circuit held that a case is not pending for purposes of the Act when the only remaining issue on the effective date is the collateral issue of the federal government's liability for attorneys' fees. 740 F.2d at 1256; *accord Commissioners of Highways v. United States*, 684 F.2d 443, 444–45 (7th Cir.1982). *See Stanwood v. Green*, 744 F.2d 714, 716 (9th Cir.1984) (per curiam) (case not pending for purposes of section 1988 when "no unresolved substantive claim" remained). The plaintiff in *Nichols* had prevailed in the district court on the merits of her claim against the Department of Housing and Urban Development, but failed in her attempt to obtain attorneys' fees based on the Freedom of Information Act (FOIA). 740 F.2d at 1252. The ruling on the merits became final because the federal government did not appeal, but the plaintiff appealed the denial

of attorneys' fees. *Id.* While her appeal was pending, the Act took effect, and the circuit court remanded for further consideration in light of the Act. *Id.* On remand, the district court again denied plaintiff's fee petition. The circuit court subsequently affirmed, reasoning that the plaintiff did not qualify under the FOIA and that the Act was inapplicable because her case was not pending when the Act took effect. *Id.* at 1252–59.

The court in *Nichols* based its decision regarding the Act primarily on the principle of narrow construction applicable to waivers of sovereign immunity. *Id.* at 1255–57. Two possible definitions of what constitutes a pending case were analyzed. *Id.* at 1256. The broader definition would consider a case pending until every issue— collateral or substantive—is resolved. *Id.* The narrower alternative would consider a case pending only when substantive issues remain. *Id.* Reasoning that "[a]s a waiver of sovereign immunity, the Act's terms must affirmatively *establish* liability, not merely fail to preclude it," *id.*, the court determined that the narrower definition must be adopted if it is not inconsistent with the language, statutory structure, and purposes of the Act. *Id.* at 1256–58.

The District of Columbia court concluded that an examination of these three factors favored a narrower construction, *id.* at 1257–58, drawing a line between substantive and collateral issues. The court first pointed out that "[t]he Act itself offers no definition of the term 'pending.'" *Id.* at 1256. It then reasoned that the structure of the Act, which includes both a specific start-up date and, for most of its provisions, a fixed cut-off date, *see* 5 U.S.C. § 504 note; 28 U.S.C. § 2412 note, suggests a congressional desire to limit the federal government's potential liability. 740 F.2d at 1257. A narrower reading of what constitutes a pending case was therefore more consistent with this structure. *Id.* Finally, the court observed that the articulated purpose of the Act is to eliminate the deterrent effect resulting from the expense of bringing suit against the

government to vindicate one's rights. *Id. See* 5 U.S.C. § 504 note. It found the narrower construction more consistent with this purpose when the only issue remaining on the Act's effective date is the collateral issue of attorneys' fees, because "no possible deterrent could be removed by an award of attorneys fees since the ... case [would have been] filed, briefed, argued, and decided by a final judgment on the merits before the Act ever took effect." 740 F.2d at 1257.

Unfortunately, there is a conflict among the circuits that have addressed this issue both about the proper mode of analysis and the result. Although the Seventh Circuit earlier arrived at the same conclusion as the District of Columbia Circuit in *Nichols*, the Fifth and Eighth Circuits hold to the contrary both in mode of analysis and result. *Compare Commissioners of Highways v. United States*, 684 F.2d 443, 444–45 (7th Cir.1982), *with Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board*, 679 F.2d 64, 67–68 (5th Cir. 1982), and *United States ex rel. Heydt v. Citizens State Bank*, 668 F.2d 444, 446 (8th Cir.1982). As a circuit conflict already exists, we must therefore decide which mode of analysis we conclude is proper even though we do not reach the question of where the line should be drawn in a case presenting the broader issue.

We believe the District of Columbia and the Seventh Circuits more closely reflect the approach mandated by latest teachings of the Supreme Court. The Eighth Circuit's opinion is devoid of any statutory analysis, and the Fifth Circuit's conclusion is hampered by a failure to heed principles of narrow construction. *See also Nichols*, 740 F.2d at 1261 (Mikva, J., concurring in part, dissenting in part). These latter courts merely applied the general principle of *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (*Bradley*), "that a court is to apply the law in effect at the time it renders its decision, unless ... there is statutory direction or legislative history to the contrary," *id.* at 711, 94 S.Ct. at 2016, without considering the difference between the purpose and

effect of the Act and the statute at issue in *Bradley*. The Supreme Court articulated the *Bradley* principle as justification for allowing a group of civil rights plaintiffs to obtain attorneys' fees pursuant to section 718 of the Education Amendments of 1972, 20 U.S.C. § 1617, *repealed by* Pub.L. No. 95–561, § 601(b)(2), 92 Stat. 2143, 2268 (1978), even though the only issue pending on that section's effective date was the propriety of an attorneys' fee award. 416 U.S. at 709–11, 94 S.Ct. at 2015–16. In *Bradley*, however, the Court did not face any potential waiver of sovereign immunity requiring application of the principle of narrow construction. By contrast, when this principle applies as it does with the Act, it harmonizes with the *Bradley* principle to require the narrowest interpretation of the sovereign immunity waiver not inconsistent with "statutory direction or legislative history." *Id.* at 711, 94 S.Ct. at 2016. This result is required by the latest teaching of the Supreme Court that "[w]aivers of immunity must be 'construed strictly in favor of the sovereign,' and not 'enlarge[d] ... beyond what the language requires.'" *Ruckelshaus*, 463 U.S. at 685, 103 S.Ct. at 3277 (citations omitted). We are disinclined to follow the Fifth and Eighth Circuit approaches because they failed to make this critical distinction.

We also reject Tongol's analogy to section 1988 cases. We recognize that some courts have held that section 1988 applies to cases in which only the collateral issue of attorneys' fees remained pending when it took effect. *See, e.g., New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1144–45 (2d Cir. 1983); *Corpus v. Estelle*, 605 F.2d 175, 177 (5th Cir.1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980). Even if this construction is correct, however, it is only because the legislative history expressly indicates that section 1988 is to be applied to pending cases in the same manner as the statute in *Bradley*. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5912 (fees are to "be awarded

pendente lite" in circumstances deemed "appropriate" by *Bradley*). Here, Congress made no such express indication regarding the applicability of the Act. Thus, in construing it we must give equal consideration to both the *Bradley* and the narrow construction principles. This leads us to embrace the analysis set forth in *Nichols*.

■ Applying this analysis leads us to conclude that a case is no longer pending for purposes of the EAJA when the sole issue remaining is the extent of a nonfederal co-party's liability for attorneys' fees. If the principle of narrow construction means anything, it compels the result we have reached.

REVERSED.